POPLAR GROVE STATE BANK, Plaintiff-Appellant, v. ROGER J. POWERS *et al.,* Defendants-Appellees (Lynn A. Bullard *et al.,* Defendants).

Second District   No. 2—90—1359

Opinion filed August 29, 1991.

Craig P. Thomas and Wesley E. Lindberg, both of Reno, Zahm, Folgate, Lindberg & Powell, of Rockford, for appellant.

Lois Cannell Ramon, of Belvidere, for appellees.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Poplar Grove State Bank, obtained a money judgment against defendants Lynn A. Bullard and C. Bernice Bullard. Plaintiff then initiated a supplementary proceeding to discover assets belonging to Lynn and C. Bernice Bullard (see Ill. Rev. Stat. 1989, ch. 110, par. 2—1402), seeking in the process to set aside Bernice's allegedly fraudulent conveyance to defendant John Bullard of part of her interest in payments from defendant Roger Powers under an installment note. John Bullard entered a special appearance (see Ill. Rev. Stat. 1989, ch. 110, par. 2—301) to object to the trial court's jurisdiction over him. The trial court held that it lacked *in personam* jurisdiction over John Bullard and dismissed him from the proceeding. Plaintiff then brought this appeal (see 134 Ill. 2d R. 304(b)(4)).

On appeal, plaintiff argues that (1) John Bullard waived his jurisdictional objections by arguing matters other than *in personam* jurisdiction in his special appearance; and (2) the trial court erred in holding that John Bullard, a resident of Iowa at all relevant times, was

not amenable to service of process pursuant to the Illinois "long-arm" statute (Ill. Rev. Stat. 1989, ch. 110, par. 2—209). We affirm.

Plaintiff's complaint in the underlying action, filed September 8, 1988, alleged that Lynn Bullard and his mother, C. Bernice Bullard (Lynn and Bernice herein), had defaulted on payments under a note that they and plaintiff had executed on July 22, 1978. The note represented a loan of $30,279.08 that Lynn took out to finance his gasoline station, which he operated from 1984 to 1988 on Boone County property. The note was secured by the inventory, equipment and accounts of the station. Robert and Bernice signed the note as accommodation makers, but received no money under the loan. Robert Bullard died in January 1988.

Robert and Bernice originally owned the property on which Lynn's gas station stood. On or about August 1984, Robert and Bernice sold the property to Roger Powers, an Illinois resident. Lynn thereafter rented the property from Powers. The sale from the Bullards to Powers was secured by a note and mortgage of August 15, 1984. The note obligated Powers to pay Bernice $58,000 plus interest at the rate of $538 per month. The note was secured by a third mortgage on the property, with Powers as mortgagee and Bernice as mortgagor. The note specifies that all payments are to be made at an address in Machesney Park, Illinois. Although the mortgage describes Bernice as being from Winnebago County, she testified at the June 2, 1989, hearing that 1989 was "the sixth year" that she had resided in Lakeland, Florida, part of the year and Lake Mills, Wisconsin, part of the year.

In February 1988, Powers informed Lynn that the latter would have to vacate the property; as a result of his having to close the gasoline station, Lynn was unable to make the payments on the loan from plaintiff. Plaintiff brought the suit on the loan shortly thereafter. On June 8, 1989, the trial court entered judgment against Lynn and Bernice for $34,309.99, including principal, interest, and attorney fees.

Plaintiff next commenced a supplementary proceeding to discover assets, naming and serving Powers as citation defendant. On July 12, 1989, the court heard testimony in the supplementary proceeding. Powers testified that as of June 12, 1989, he owed Bernice $45,776.88 on the note.

Plaintiff introduced an exhibit that Powers identified as an assignment from Bernice to her son John. The assignment, dated January 10, 1988, stated that Bernice thereby assigned 40% of her right, title and interest in the note to John Bullard of Cedar Rapids, Iowa, with

all payments on the note to be made to Bernice at the Bank of Lake Mills in Wisconsin. Underneath Bernice's signature, Powers signed to acknowledge that he received the assignment and accepted its terms. Powers testified that one of the Bullards, possibly Bernice's son Frank, called him and asked if he would object to signing the document; Powers had no objection and did so on January 10, 1988. Powers had previously sent his checks to Bernice's account with plaintiff, but now sent them to her bank in Wisconsin. In March 1989, a member of the Bullard family called Powers and asked him to start making out the checks to John or Bernice and sending the checks to John in Iowa, as he would be handling Bernice's money for her. Powers complied.

On July 17, 1989, the court entered an order requiring Bernice, after taking a $2,000 statutory exemption from judgment, to convey 60% of her payments from Powers to plaintiff. The court reserved ruling on the validity of the assignment of the other 40% to John Bullard. The court then granted plaintiff leave to commence supplementary proceedings against John Bullard.

On August 2, 1989, plaintiff filed a citation to discover assets directed to John Bullard. The citation was dated July 14, 1988. The citation was served on John Bullard at Cedar Rapids on July 19, 1989. John was not served with process again, although on August 28, 1990, plaintiff filed a notice to John Bullard of a hearing on the supplemental proceeding. On August 4, 1989, John Bullard wrote directly to plaintiff's attorney. He stated that his attorney had told him that, as a resident of Iowa, he need not appear at the supplementary proceeding. He then explained that he had, after years of effort, persuaded Bernice to agree to the assignment so that Bernice would not end up giving away all of her assets to Lynn Bullard.

On August 28, 1990, shortly after obtaining a judgment against Lynn Bullard in a supplementary proceeding, plaintiff filed its "Complaint and Amended Supplemental Proceedings under section 2—1402" naming Bernice Bullard, John Bullard and Roger Powers as defendants. Plaintiff alleged that the assignment from Bernice to John Bullard was a fraudulent conveyance. It asked that the court declare the assignment void and turn over the obligation thereunder to plaintiff, to be applied against the judgment in the original suit.

On September 11, 1990, John Bullard filed his "Special and Limited Appearance," moving to quash service on him. He stated that he had been a resident of Cedar Rapids, Iowa, for over 10 years and had done no act that would subject him to the jurisdiction of Illinois courts pursuant to the Illinois "long-arm" statute (Ill. Rev. Stat. 1989, ch.

110, par. 2—209). He also argued that because plaintiff itself had admitted that John Bullard had no property of the judgment debtor in his possession, plaintiff could not bring a supplementary proceeding under section 2—1402 against John Bullard; that the court had ruled, on August 23, 1989, that a prior attempt to bring John Bullard before the court in a supplementary proceeding had been ruled invalid; and that plaintiff had not obtained leave of court to commence another supplementary proceeding against John Bullard.

The court heard arguments on John Bullard's objection to personal jurisdiction. The parties also submitted briefs on the matter, but these are not part of the record on appeal. Plaintiff's attorney stressed that the court had jurisdiction over John Bullard because John had transacted business in Illinois (see Ill. Rev. Stat. 1989, ch. 110, par. 2—209(a)(1)) and also argued that the assignment was void as a fraudulent conveyance. John Bullard's attorney argued that the court had no jurisdiction over him because he lacked sufficient contacts and also because a supplementary proceeding under section 2—1402 was not a permissible way to set aside an allegedly fraudulent conveyance. The trial judge suggested that, by making this latter argument, John Bullard's attorney might be waiving his jurisdictional argument. The attorney responded that because plaintiff had brought both a supplementary proceeding and a complaint directed toward the allegedly fraudulent conveyance under the same proceeding, she had to address the jurisdictional question under both headings. She argued that John Bullard could not be brought into court for the supplementary proceeding unless it was undisputed that he held assets of the judgment debtor.

On November 2, 1990, the trial court issued a "memorandum of decision" dismissing the proceeding against John Bullard for lack of personal jurisdiction. The judge explained first that although he did not accept John Bullard's argument that a fraudulent conveyance could not be set aside by a supplementary proceeding, John Bullard had not waived his objection to jurisdiction by making this argument. This argument was part of the objections to both *in personam* and *in rem* jurisdiction.

The judge explained next that, as John Bullard had properly been served with the citation, the only issue was his amenability to process under the Illinois "long-arm" statute. The judge concluded that John had committed none of the acts listed in the statute as constituting submission to the jurisdiction of Illinois courts (see Ill. Rev. Stat. 1989, ch. 110, par. 2—209(a)). The judge stated further that, although neither party had raised the issue, he had also considered the latest

amendment to the statute, effective September 7, 1989, allowing a court to exercise jurisdiction on any basis permitted by the Illinois and Federal Constitutions (see Ill. Rev. Stat. 1989, ch. 110, par. 2—209(c)). The judge concluded that, even stretched to the limits of due process, the statute did not grant personal jurisdiction over John Bullard because John Bullard lacked sufficient "Minimum contacts" with Illinois.

Plaintiff moved to reconsider. The trial court denied the motion, and plaintiff timely appealed.

Plaintiff argues first that John Bullard waived his objections to the court's jurisdiction when he challenged the court's power to adjudicate whether the assignment was a fraudulent conveyance. Plaintiff argues that by addressing the court's *in rem* jurisdiction as well as its *in personam* jurisdiction, John Bullard converted the special appearance into a general appearance. We disagree.

We note that plaintiff did not raise the waiver issue below and did not argue waiver in its motion for rehearing. Nonetheless, because the trial judge considered the issue after raising it *sua sponte*, we will also address the argument despite plaintiff's failure to pursue the matter more vigorously.

■ Section 2—301(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—301(a)) provides that a special appearance may be made "for the purpose of objecting to the jurisdiction of the court over the person of the defendant. *** Every appearance, prior to judgment, not in compliance with the foregoing is a general appearance." A defendant who asks for affirmative relief on the merits from the trial court waives objections to the court's *in personam* jurisdiction over him. He may not, by his voluntary action, invite the court to exercise its jurisdiction over him while he simultaneously denies that the court has such jurisdiction. *Supreme Hive Ladies of the Maccabees of the World v. Harrington* (1907), 227 Ill. 511, 525; *Kotlisky v. Kotlisky* (1990), 195 Ill. App. 3d 725, 731.

■ Plaintiff argues that John Bullard waived his objections to *in personam* jurisdiction when he argued additionally that the court lacked *in rem* jurisdiction. This argument rests on a faulty premise. A challenge to the court's *in rem* jurisdiction may be made by a special appearance, for *in rem* jurisdiction is simply a limited form of jurisdiction over the person. (*Davis v. Davis* (1973), 9 Ill. App. 3d 922, 929.) A defendant does not convert a special appearance into a general appearance merely by arguing that the court lacks jurisdiction over the *res* in an action *in rem*. *Kotlisky*, 195 Ill. App. 3d at 732.

■ John Bullard's argument that the court lacked authority to adjudicate a claim of a fraudulent conveyance was offered to support his challenge to the court's jurisdiction over the assignment (and therefore over him). In challenging the court's jurisdiction over the *res*—his interest in the Powers note—John Bullard was not asking for affirmative relief or arguing the merits of plaintiff's claim that the assignment was fraudulent. He was not inconsistently denying the court's jurisdiction over him while attempting to invoke that jurisdiction in his favor. As he did not go beyond arguing jurisdiction in his special appearance, he did not waive his jurisdictional objections.

Plaintiff gives several reasons why the trial court erred in quashing service on John Bullard. Plaintiff argues initially that John Bullard was amenable to service in Illinois pursuant to an amendment to the long-arm statute, effective September 7, 1989, allowing a court to exercise jurisdiction on any basis "now or hereafter permitted by the Illinois Constitution and the Constitution of the United States" (Ill. Rev. Stat. 1989, ch. 110, par. 2—209(c)). Plaintiff argues that section 2—209(c) allows a court to exercise personal jurisdiction to the extent permitted by due process and that due process allowed the court here to exert jurisdiction over John Bullard.

Plaintiff did not invoke the new section 2—209(c) at the trial level. Although the trial judge raised this amendment *sua sponte*, neither he nor the parties discussed its applicability where the accrual of the cause of action, the filing of the suit and service on the defendant have all preceded the effective date of the amendment. Plaintiff's appellate brief simply assumes that the amendment applies in this case.

Moreover, plaintiff's brief further assumes that the amendment carries personal jurisdiction to the limits of due process. Plaintiff also makes minimal argument or citation to relevant authority to show that this case falls within those limits.

■ Because the applicability and effect of the amendment were not argued before the trial court and have been raised only in the most haphazard manner on appeal, we conclude that plaintiff has waived any right to invoke the amendment. We do note that whether to apply statutes retroactively, even as to purely procedural matters, commonly raises difficult questions of legislative intent. (See, *e.g., Moore v. Jackson Park Hospital* (1983), 95 Ill. 2d 223; *Salzbrenner v. Beckham* (1986), 145 Ill. App. 3d 941.) An appellate court is entitled to have such an issue defined clearly and argued with citation to relevant authority and is not a depository in which an appellant may dump the burden of argument and research. (*Pecora v. Szabo* (1982), 109 Ill. App. 3d 824, 825-26.) An issue that an appellant raises only

inadequately is waived. (134 Ill. 2d R. 341(e)(7); *Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.* (1987), 118 Ill. 2d 389, 401; *Ideal Insurance Agency, Inc. v. Shipyard Marine, Inc.* (1991), 213 Ill. App. 3d 675, 680; *Pecora,* 109 Ill. App. 3d at 826.) We therefore consider the effect of the new section 2—209(c) no further.

Plaintiff argues that John Bullard was amenable to process in Illinois because he committed several acts that the long-arm statute considers submission to the jurisdiction of the Illinois courts. Specifically, plaintiff argues that John Bullard has (1) transacted business within the State; (2) committed a tortious act within the State; and (3) acquired ownership, possession or control of an asset or thing of value present within the State when ownership, possession or control was acquired. (See Ill. Rev. Stat. 1989, ch. 110, pars. 2—209(a)(1), (a)(2), (a)(10).) John Bullard argues that his conduct fits within none of these statutory categories and that, even if it does, service on him was properly quashed as inconsistent with constitutional due process. We agree with John Bullard that his conduct does not fall within any of the statutory categories upon which plaintiff relies and hold that the trial court properly quashed service on him. We therefore need not reach his due process argument.

■ The scope of the long-arm statute, at least disregarding the amendment that we have declined to consider, is not coterminous with the reach of constitutional due process. (*Rollins v. Ellwood* (1990), 141 Ill. 2d 244, 271.) Rather, due process sets an outer limit even where jurisdiction exists under statutory criteria. (*Rollins,* 141 Ill. 2d at 271-72.) To find that a nonresident defendant is amenable to service, a court must conclude both that the requirements of the long-arm statute have been met and that the exercise of jurisdiction over the defendant comports with due process under the Illinois and United States Constitutions. (*Rollins,* 141 Ill. 2d at 274-75; *Ideal Insurance,* 213 Ill. App. 3d at 678.) Therefore, where the statute is not satisfied, the court need not consider whether due process would also bar the exercise of jurisdiction over the defendant. *R.W. Sawant & Co. v. Allied Programs Corp.* (1986), 111 Ill. 2d 304, 311.

■ A plaintiff has the burden to show a valid basis for jurisdiction over a nonresident defendant. (*R.W. Sawant & Co.,* 111 Ill. 2d at 310; *Konicki v. Wirta* (1988), 169 Ill. App. 3d 21, 24.) The plaintiff must show that the defendant has committed an act or acts satisfying one of the criteria of section 2—209(a) of the long-arm statute. Only causes of action arising from such acts may be asserted against a defendant. (Ill. Rev. Stat. 1989, ch. 110, par. 2—209(f) (formerly section 2—209(c)); *Ideal Insurance,* 213 Ill. App. 3d at 679.) Although the

original suit against Lynn and Bernice Bullard did not involve the assignment between Bernice and John, the relevant cause of action here—plaintiff's supplementary proceeding against John Bullard—does arise out of the latter's participation in the allegedly fraudulent assignment.

Plaintiff asserts that John Bullard is amenable to service in Illinois because he has transacted business within the State. Plaintiff appears to argue that by agreeing to receive payments from an Illinois resident, Roger Powers, under the assignment, John Bullard entered into a contractual relationship involving Illinois and therefore "transacted business" within Illinois. We do not find plaintiff's argument persuasive.

■ A defendant transacts business in Illinois when substantial performance of contractual duties is to be rendered in Illinois or when the defendant invokes the benefits and protections of Illinois law in the contractual relationship. (*Arthur Young & Co. v. Bremer* (1990), 197 Ill. App. 3d 30, 36.) The term "transaction of business" refers to business in the commercial sense. (*Carlson v. Carlson* (1986), 147 Ill. App. 3d 610, 613.) Essentially, the statute requires that a plaintiff's claim lie in the wake of the commercial activities by which a defendant submitted to the jurisdiction of Illinois courts. (*Ideal Insurance*, 213 Ill. App. 3d at 680; *Financial Management Services, Inc. v. Sibilsky & Sibilsky, Inc.* (1985), 130 Ill. App. 3d 826, 833.) Only the acts of the defendant may be considered to determine whether business was transacted in Illinois. *Ideal Insurance*, 213 Ill. App. 3d at 680.

■ In determining whether a given transaction amounts to transacting business in Illinois, courts look to factors such as who initiated the transaction, where the contract was entered into, and where performance of the contract was to take place. (*Gordon v. Tow* (1986), 148 Ill. App. 3d 275, 280-81.) Assuming *arguendo* that John Bullard transacted business "in the commercial sense" when he acquired, for no consideration, a portion of Bernice Bullard's interest in the Powers note, we must conclude that this was not the transaction of business in this State.

There is nothing to indicate that John Bullard performed contractual duties in Illinois. John Bullard has not at any relevant time set foot in Illinois. He negotiated the assignment while in Iowa. His "duty" under the assignment is to deposit checks, which he has done only in Iowa. Although he apparently took the initiative in procuring the assignment, he did so through contact with Bernice Bullard, a Wisconsin resident. Plaintiff points out that Roger Powers acknowledged the assignment in Illinois, but does not argue (and points to

nothing to indicate) that this acknowledgment was necessary to effect the assignment, at least to the extent of giving John Bullard the right to receive payments from Bernice Bullard. Moreover, such a formality of contract execution is not determinative of *in personam* jurisdiction. (*Ideal Insurance*, 213 Ill. App. 3d at 681-82; *Kotlisky v. Kotlisky* (1990), 195 Ill. App. 3d 725, 737; *Northern Trust Co. v. Randolph C. Dillon, Inc.* (N.D. Ill. 1983), 558 F. Supp. 1118, 1122.) It is also irrelevant that Powers sent defendant checks from Illinois. As we have noted, only the defendant's acts may be considered in determining personal jurisdiction; similarly, a defendant does not transact business in Illinois merely by entering into a contract that involves an Illinois resident. *Golden Rule Insurance Co. v. Michely* (1990), 198 Ill. App. 3d 314; *Natural Gas Pipeline Co. of America v. Mobil Rocky Mountain, Inc.* (1986), 155 Ill. App. 3d 841, 846; *City of East Moline v. Bracke, Hayes & Miller* (1985), 133 Ill. App. 3d 136, 141.

There is also no indication that John Bullard has sought to invoke the benefits or protections of Illinois law. Nothing in the assignment states that the law of Illinois is to govern the contractual relationship between John Bullard, an Iowan, and Bernice Bullard, a resident of Wisconsin. (See *Michely*, 198 Ill. App. 3d at 321.) Even if John Bullard could sue in Illinois courts to enforce the note against Powers, this is not, contrary to plaintiff's assertion, a sufficient basis for jurisdiction over him in the present case. (*Woodfield Ford, Inc. v. Akins Ford Corp.* (1979), 77 Ill. App. 3d 343, 351.) We therefore conclude that John Bullard is not amenable to service under section 2—209(a)(1) of the long-arm statute.

■ We also reject plaintiff's argument that John Bullard has committed a tortious act within the State (Ill. Rev. Stat. 1989, ch. 110, par. 2—209(a)(2)). Plaintiff asserts that the allegedly fraudulent conveyance occurred in Illinois because, as plaintiff is an Illinois corporation, Illinois is where the injury will be felt. This argument ignores the established rules that the place of a wrong is where the last event necessary to make the defendant liable took place (*Yates v. Muir* (1986), 112 Ill. 2d 205, 209; *Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 437-38; *Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432) and that loss felt in a plaintiff's "Illinois pocketbook" is not sufficient to establish jurisdiction where the tortious acts all took place outside of Illinois. (*R.W. Sawant & Co.*, 111 Ill. 2d at 312; *Green*, 86 Ill. 2d at 437-38; *Longo v. AAA-Michigan* (1990), 201 Ill. App. 3d 543, 552.) Insofar as the assignment here was fraudulent, the fraud was completed by tortious behavior by nonresidents acting outside the State. Even assuming that Powers'

acknowledgment was the last act necessary to make the assignment valid as to him (see *Grunloh v. Effingham Equity, Inc.* (1988), 174 Ill. App. 3d 508, 521), the actions of John Bullard and Bernice Bullard were sufficient to make the assignment valid between these two non-residents. (See *Overseas Development Disc Corp. v. Sangamo Construction Co.* (7th Cir. 1982), 686 F.2d 498, 504.) Plaintiff therefore has not shown that John Bullard committed a tortious act *within this State*.

Plaintiff argues finally that John Bullard has submitted to the jurisdiction of Illinois courts by acquiring ownership, possession or control of an asset or thing of value present within the State when ownership, possession or control was acquired (Ill. Rev. Stat. 1989, ch. 110, par. 2—209(a)(10)). Plaintiff maintains that because the note between Powers and Bernice Bullard was created in Illinois, John Bullard acquired possession of 40% of this Illinois "thing of value" when he entered into the assignment.

Section 2—209(a)(10) was added to the long-arm statute effective September 7, 1989, the same time as section 2—209(c). The parties' trial briefs are not part of the record on appeal, and nothing else indicates that the trial judge was presented with this argument prior to the motion to reconsider. Assuming *arguendo* that the amendment applies retroactively and that plaintiff has not waived the issue by failing to raise it below or by supporting it here with only a one-paragraph argument devoid of citation to authority, we conclude that the argument is without merit.

We believe that the plain meaning of section 2—209(a)(10) is that, for purposes of *in personam* jurisdiction, the asset or thing of value involved must have been present in the State when the defendant acquired his "ownership, possession or control" of it. Here, however, Bernice Bullard was residing out of State when John Bullard received part of her interest in the payments on the Powers note. Assuming that this interest is an "asset or thing of value" within the meaning of section 2—209(a)(10), we conclude that it was not in the State when John Bullard acquired his share of it. Under Illinois law, the situs of a debt, insofar as there can be one, is the domicile of the creditor. (*Lancashire Insurance Co. v. Corbetts* (1897), 165 Ill. 592, 596-97; *Holbrook v. Ford* (1894), 153 Ill. 633, 645-46; *Little Audrey's Transportation Co. v. Beverly Bank* (S.D. Ill. 1964), 236 F. Supp. 352, 353.) Plaintiff has not shown that Bernice Bullard had an Illinois domicile at the time of the assignment. We thus conclude that plaintiff has not met its burden to show *in personam* jurisdiction over John Bullard under this or any other section of the long-arm statute.

Because we find no statutory basis for the trial court to exert jurisdiction over John Bullard, we need not address his argument that an attempt to do so would violate due process.

For the foregoing reasons, the judgment of the circuit court of Boone County is affirmed.

Affirmed.

McLAREN and INGLIS, JJ., concur.